**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PRESTON JAMES CAMPBELL,

    Defendant - Appellant.

No. 25-5065

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:24-CR-00264-RLH-1)**

_____

Andrew M. Casey, Hendrick, Casey, Hutter, PLLC, Oklahoma City, Oklahoma, for Defendant - Appellant Preston Campbell.

Elliot P. Anderson, Assistant United States Attorney (Clinton J. Johnson, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff - Appellee United States of America.

_____

Before **BACHARACH**, **EBEL**, and **KELLY**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

    In this direct criminal appeal, Preston Campbell challenges his conviction for using a deadly or dangerous weapon to assault a federal officer engaged in official duties. Campbell asserts, among other arguments, that the district court erred in

ruling, pretrial, that under Fed. R. Evid. 609(a)(1) the Government likely could use five of Campbell's prior convictions to impeach his testimony. But, because at trial Campbell chose not to testify, he has waived review of that preliminary ruling. Having jurisdiction under 28 U.S.C. § 1291 and concluding the rest of Campbell's appellate arguments are also unavailing, we AFFIRM his conviction.

## I. BACKGROUND

Viewed in the light most favorable to the verdict, see United States v. Poterbin, 162 F.4th 1254, 1259 (10th Cir. 2025), the evidence presented at trial indicated the following: Deputy U.S. Marshals O'Connor and Reed were seeking to arrest Campbell on two outstanding warrants. The deputies had a tip that Campbell would be at the Dollar General store in Mannford, Oklahoma, during the day on July 1, 2024. The deputies, in an unmarked truck, located a white sedan parked in the store's parking lot, with a woman driver and a passenger that the deputies thought was Campbell. In fact, the passenger was Campbell's brother. While the deputies waited for backup, the sedan began backing out of its parking spot. The deputies turned on their truck's lights and sirens and Deputy O'Connor drove the truck behind the sedan to block its exit.

Both deputies, wearing uniforms and badges, exited their vehicle with their guns drawn and approached the sedan from both sides. The deputies ordered the sedan's occupants to put their hands up. The driver and front-seat passenger complied. But Campbell, who the deputies did not initially see because he had been lying down in the backseat of the sedan, quickly exited the sedan's passenger-side

2

back door, making contact with and brushing by Deputy O'Connor.  The deputy grabbed Campbell's right wrist, but Campbell broke free.  Although the deputy did not realize it at the time, video from his body-worn camera revealed that Campbell had been holding a knife with a three- to four-inch blade in his right hand.

Deputy O'Connor chased Campbell, but lost him after Campbell ran through some thick brush and into a wooded area.  As Campbell ran through the brush, he jumped over a barbed wire fence and kept running.  Deputy Reed, also chasing Campbell, did not see the barbed wire and got tangled in it, injuring his foot.  Law enforcement searched the woods for several hours without finding Campbell.  He was arrested several weeks later.

A grand jury indicted Campbell for violating 18 U.S.C. § 111(a)(1), (b)— using a deadly and dangerous weapon to assault, resist, oppose, impede, intimidate and interfere with a federal officer engaged in official duties.  Prior to trial, the district court ruled that, depending on the evidence presented at trial, the Government could likely use five of Campbell's prior felony convictions to impeach his testimony.

During the trial, the Government presented the testimony of both deputies and showed the video from Deputy O'Connor's body camera, as well as still photos made from the video depicting the object Campbell was holding in his right hand.  The defense did not offer any evidence and Campbell chose not to testify.

The jury convicted Campbell of assaulting Deputy O'Connor and specifically found that Campbell had done so using a deadly or dangerous weapon.  The use of a

deadly or dangerous weapon during the assault increased the statutory maximum punishment for Campbell's offense to not more than twenty years in prison. 18 U.S.C. § 111(b). The district court imposed a 130-month prison sentence, to be followed by three years' supervised release. That sentence fell within the advisory sentencing range calculated under the Sentencing Guidelines.

## II. DISCUSSION

On appeal, Campbell raises five grounds for reversing his conviction. As explained next, none of those grounds warrants relief.

**A. Because he did not testify, Campbell waived review of the district court's preliminary pretrial ruling that the Government, under Fed. R. Evid 609(a)(1), could likely use five of Campbell's prior convictions to impeach his testimony**

Campbell contends that the district court abused its discretion in ruling, prior to trial, that pursuant to Fed. R. Evid. 609(a)(1) the Government could likely use five of Campbell's prior convictions to impeach his testimony. Rule 609(a)(1) provides, in relevant part:

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
> . . . .
>
> **(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant.

Fed. R. Evid. 609(a)(1)(B).

4

Here, in ruling that, depending on the evidence presented at trial, the Government likely could use five of Campbell's prior convictions to impeach his testimony, the district court made clear that its pretrial ruling was preliminary, ending its pretrial order by stating:

> Finally, the court notes that the Tenth Circuit has recognized that "[i]n most cases, the admissibility of 609(a)(1) evidence cannot be finally decided in a pretrial hearing," as "a 609(a)(1) ruling . . . necessarily requires a district court to balance the prejudicial effect and probative value of the disputed evidence, a task that can only be performed by reference to the other contextual evidence presented at trial." . . . Thus, this ruling remains subject to the evidence presented at trial.

(R. v.1, pp. 107–08 (quoting United States v. Commanche, 577 F.3d 1261, 1270 (10th Cir. 2009).)  Campbell acknowledged in his trial brief that the district court's pretrial Rule 609(a)(1) ruling was preliminary, stating:

> The Court previously already ruled in open court on Defendant's omnibus motion in limine as well as the 609 impeachment inquiries advanced by the defense.  In the event Defendant chooses to testify, he will likely re-urge some of those issues and then potentially choose to elicit testimony regarding the 609 impeachment convictions that had previously been allowed for use.

(Id. at p. 175.)  The Government, in its trial brief, also acknowledged that the court's pretrial Rule 609 ruling was not final, but was instead subject to the evidence presented at trial.

At trial, Campbell did not reassert his Rule 609(a)(1) argument that the Government should not be able to use his prior convictions to impeach him.  Further, Campbell chose not to testify.  But, to "raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."  Luce v.

5

United States, 469 U.S. 38, 43 (1984); see id. at 39–43 (declining to review trial court's preliminary ruling under Rule 609(a) that government could use prior conviction to impeach defendant if he testified because defendant did not testify); see also Culp v. Remington of Montrose Golf Club, LLC, 133 F.4th 968, 992–93 (10th Cir. 2025) (discussing Luce); United States v. Powell, 982 F.2d 1422, 1434 (10th Cir. 1991) (relying on Luce to hold that, because the defendant did not testify at trial, this court could not review district court's pretrial ruling denying defendant's motion in limine to exclude evidence of his prior convictions).

"The Luce Court reasoned that only when the defendant actually testifies can the district court determine whether the probative value of the evidence [of the prior conviction] outweighs the 'prejudicial effect to the accused.'" United States v. Martinez, 76 F.3d 1145, 1151 (10th Cir. 1996) (quoting Luce, 469 U.S. at 43). Luce's waiver rule, then, is premised on the inadequacy of the record before an appellate court to review a preliminary Rule 609(a) ruling. Luce noted, as an initial matter, that because the Rule 609 ruling is only preliminary, the government might decide not to use the prior convictions at trial to impeach the defendant's testimony and the district court, in any event, could change its preliminary ruling. 469 U.S. at 41–42. Moreover, when the defendant does not testify, the reviewing court does not know what the defendant's testimony would have been, and Luce indicated that a proffer of the defendant's testimony would be inadequate to address this concern. Id. at 41 n.5. "To perform" the balancing of probative value and prejudice that Rule

6

609(a)(1) requires, "the court must know the precise nature of the defendant's testimony, which is unknowable when . . . the defendant does not testify." Id. at 41.

Furthermore, "a reviewing court cannot assume that" it was "the adverse [preliminary Rule 609] ruling [that] motivated a defendant's decision not to testify" "[b]ecause an accused's decision whether to testify 'seldom turns on the resolution of one factor.'" Id. at 42 (quoting New Jersey v. Portash, 440 U.S. 450, 467 (1979) (Blackmun, J., dissenting)).

> Even if these difficulties could be surmounted, the reviewing court would still face the question of harmless error. . . . Were in limine rulings under Rule 609(a) reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term "harmless" an error that presumptively kept the defendant from testifying. Requiring that a defendant testify in order to preserve Rule 609(a) claims will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction.

Id. Based on Luce, then, Campbell's decision not to testify at trial waived any review of the district court's preliminary Rule 609(a)(1) order.

During oral argument, Campbell pointed to this court's decision in United States v. Mejia-Alarcon, 995 F.2d 982 (10th Cir. 1993), as an example of this court reviewing a pretrial Rule 609 ruling. But in that case, after the district court ruled prior to trial that the Government could use Mejia-Alarcon's prior conviction to impeach his testimony, Mejia-Alarcon testified at trial and the defense "brought the

7

conviction out on direct examination of Mejia, presumably to lessen its impact." Id.

at 985. Luce's waiver rule, therefore, was not triggered in Mejia-Alarcon.[1]

## B. Testimony that Deputy Reed and a police dog were injured by barbed wire

Campbell asserts that the district court abused its discretion in allowing

Deputy O'Connor to testify, over Campbell's objection for relevance, that his

---

[1] There are also other distinctions between Mejia-Alarcon and this case. The district court there relied on Rule 609(a)(2), a different section of Rule 609 than is at issue here, to deny Mejia-Alarcon's pretrial motion in limine seeking to exclude use of his prior conviction. 995 F.2d at 985. Rule 609(a)(2) permits the use of a prior conviction for impeachment "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." In the pretrial order at issue in Mejia-Alarcon, the district court conclusively ruled that the defendant's prior conviction qualified as such a crime. 995 F.2d at 985. Because that "evidentiary issue was one akin to a question of law" that was "not dependent upon the character of the other evidence admitted at trial," and because the district court, pretrial, "unequivocally" ruled that Mejia-Alarcon's prior conviction could be used for impeachment under Rule 609(a)(2), this court held that Mejia-Alarcon did not have to reassert his Rule 609(a)(2) objection at trial to preserve it. Id. at 987; see also id. at 985–88. Mejia-Alarcon contrasted the Rule 609(a)(2) situation presented in that case with a situation under Rule 609(a)(1), the section of the rule at issue here, noting

> that Mejia would not have been entitled to rely on a pretrial ruling admitting the conviction under Rule 609(a)(1), as any final determination as to admissibility under Rule 609(a)(1) rests on a balancing of the probative value and prejudicial effect of the conviction—a balancing that could only properly be performed after an assessment of the evidence that had come in up to the point of its admission.

Id. at 987 n.2; see also Commanche, 577 F.3d at 1270 (recognizing that Mejia-Alarcon's distinguishing pretrial rulings under Rule 609(a)(1) from those under Rule 609(a)(2) rulings was dicta, but "consider[ing] it well-reasoned and choos[ing] to follow it" to hold that, "[i]n most cases, the admissibility of 609(a)(1) evidence cannot be finally decided in a pretrial hearing"). Mejia-Alarcon's analysis further supports our conclusion here that Campbell waived review of the preliminary Rule 609(a)(1) order.

partner, Deputy Reed, injured his foot "pretty badly" while chasing Campbell because Campbell jumped over a barbed wire fence as he fled into the trees, but Deputy Reed did not see the barbed wire and got his foot entangled in it.  (R. v.2, p. 45.)  Officer Reed also testified to his injury, without objection.  Deputy Reed further testified, over Campbell's relevance objection, that a police dog searching for Campbell later in the day also got hurt on the barbed wire.[2]

Because Campbell objected at trial on the basis of relevance, this court reviews the district court's rejection of those objections for an abuse of discretion.  See United States v. Cole, 162 F.4th 1070, 1076 (10th Cir. 2025) ("Preserved objections to decisions to admit evidence are reviewed for abuse of discretion."), petition for cert. filed, (U.S. June 17, 2026) (No. 25-7633).[3]

---

[2] In the background section of his brief, Campbell mentions that the district court, over Campbell's objection, also allowed Deputy O'Connor to testify about his "body armor and the weaknesses it has to the under arm and side of chest area." (Aplt. Br. 7.)  But Campbell does not develop any argument on appeal challenging that testimony.

[3] For the first time on appeal, Campbell argues that, even if this evidence was relevant, its probative value is outweighed by its unfair prejudice to Campbell, contrary to Fed. R. Evid. 403.  Because Campbell did not preserve his Rule 403 argument at trial, this court would ordinarily review it for plain error.  See United States v. Lopez, 131 F.4th 1114, 1127 (10th Cir. 2025).  But because Campbell did not argue plain error in his opening brief, he has waived any review of this argument. See United States v. Leffler, 942 F.3d 1192, 1196 (10th Cir. 2019).  This court has discretion to overlook that waiver, particularly if the defendant asserts a plain-error argument in his reply brief.  See id. at 1198.  But Campbell did not file a reply brief. We, therefore, decline to exercise our discretion to review Campbell's Rule 403 arguments and deem those to be waived.  Even if we were to address Campbell's Rule 403 argument, we would conclude it is unavailing.

**1. Testimony about Deputy Reed's injury was relevant**

The trial court did not abuse its discretion in ruling that testimony about Deputy Reed injuring his foot was relevant because it "was part of the event" underlying the charged offense. (R. v.2, p.99.) Such testimony, as intrinsic or res gestae evidence, "'is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury.'" United States v. Gallegos, 111 F.4th 1068, 1092 (10th Cir. 2024) (quoting United States v. Parker, 553 F.3d 1309, 1314 (10th Cir. 2009)). Here, both deputies immediately chased Campbell as he ran into the woods. Evidence of Deputy Reed's injury tends to explain how Campbell was able to get away from the deputies. See id. at 1071, 1093–94 (holding trial court did not abuse its discretion in admitting evidence of flight following an assault on a federal officer as intrinsic or res gestae evidence).

**2. Testimony about the police dog's injury**

On the other hand, we conclude that the trial court abused its discretion in allowing Deputy Reed to testify about a police dog being injured by barbed wire during a later search for Campbell. That testimony was not "'directly connected to the factual circumstances of the crime,'" Gallegos, 111 F.4th at 1092 (quoting Parker, 553 F.3d at 1314), but instead concerned a search for Campbell occurring later that day, after the immediate incident involving the assault on Deputy O'Connor had ended.

On appeal, the Government suggests testimony about the police dog's injuries would have been relevant to Campbell's "state of mind." (Aple Br. 26.) Although

evidence of a defendant's flight can be relevant to a defendant's "consciousness of guilt," Gallegos, 111 F.4th at 1092 (quoting United States v. Martinez, 681 F.2d 1248, 1256 (10th Cir. 1982) (per curiam), and citing other cases), the fact that a police dog was injured later in the day by barbed wire does not address Campbell's immediate flight following the charged assault.

Although we conclude that testimony about the police dog's injuries was irrelevant, any error in admitting that minimal testimony was harmless; that is, we cannot conclude it affected the outcome of the trial.  See Fed. R. Crim. P. 52(a); United States v. Freeman, 70 F.4th 1265, 1286–87 (10th Cir. 2023).

**C. There was sufficient evidence for a rational jury to find beyond a reasonable doubt that Campbell <u>used</u> a deadly or dangerous weapon during the assault**

Campbell next contends that there was insufficient evidence presented at trial that he "used" the knife he was holding to assault Deputy O'Connor.  "When assessing a challenge to the sufficiency of the evidence, we 'review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt.'"  United States v. Jimenez-Marquez, 171 F.4th 1204, 1207 (10th Cir. 2026) (quoting United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)), petition for cert. filed, (U.S. July 6, 2026) (No. 26-5023).

Based on the body camera video and still photos made from that video, there was evidence to support a rational juror finding that the object Campbell held in his

11

right hand was "a deadly or dangerous weapon," defined for the jury as "any object capable of inflicting death or serious bodily injury" (R. v.1, p. 231[4]).

The district court further instructed jurors that, for "such a weapon to have been 'used,' the government must prove that Mr. Campbell not only possessed the weapon, but that he intentionally displayed it in some manner while assaulting Mr. O'Connor." (Id.)  There was sufficient evidence to support a rational jury finding that Campbell actively <u>used</u> the knife when he assaulted Deputy O'Connor.  The jury saw the video and several still photos taken from the video showing Campbell holding a knife and moving his arm at the deputy as he pushed by him.  Further, Deputy O'Connor testified, among other things, that Campbell used a "textbook" grip and made a stabbing motion toward the deputy while holding the knife.  (R. v.2, pp. 80–81.)  Although the deputy had initially thought Campbell was trying to strike or hit him, after the deputy saw the video taken by his body camera he realized that Campbell was holding a knife in his hand.  Based on this evidence, a reasonable jury could have found beyond a reasonable doubt that Campbell actively used the knife to assault Deputy O'Connor.

---

[4] The relevant question is whether there was sufficient evidence for a rational jury to find beyond a reasonable doubt the legal elements of the crime charged, not whether a rational jury could have found the elements as instructed.  See <u>United States v. Simpkins</u>, 90 F.4th 1312, 1315–16 (10th Cir. 2024).  Nevertheless, here the trial court based its instruction on Tenth Circuit Pattern Criminal Jury Instruction 2.09 and there is no suggestion that the instruction incorrectly stated the legal elements of the charged offense.

Campbell's contrary arguments are unpersuasive. He views the video differently than the deputy. While Deputy O'Connor testified that Campbell used a "textbook" grip and made a stabbing motion toward the deputy while holding the knife (R. v.2, pp. 80–81), Campbell contends that the video shows he was instead hiding the weapon and not holding the knife in a way that one would expect a person to hold a knife if that person was trying to stab someone. A rational jury could have viewed the evidence as Campbell asserts. That does not mean, however, that there was insufficient evidence to support his conviction. Evidence can be sufficient to support a conviction even though it does "not conclusively exclude every other reasonable hypothesis[,] and it [does] not negate all possibilities except guilt." United States v. Jones, 151 F.4th 1235, 1249 (10th Cir. 2025) (quoting United States v. Flechs, 98 F.4th 1235, 1243 (10th Cir.), cert. denied, 145 S. Ct. 310 (2024)). In assessing the sufficiency of the evidence, we will not question "the jury's resolution of evidence if it is reasonable," United States v. Garcia, 74 F.4th 1073, 1117 (10th Cir. 2023), which it is here.

Campbell further contends, among other things, that this evidence was insufficient because the deputy "did not have any sense that he was assaulted with a weapon during the moment in question." (Aplt. Br. 24.) The deputy testified that he initially thought Campbell was trying to strike or hit him—an assault—but he did not initially realize Campbell was holding a knife when he did so. Campbell cites no authority requiring that the deputy had to know that Campbell was holding a knife at the time of the assault.

13

Lastly, the cases on which Campbell relies are unhelpful to him. Bailey v. United States, which involved a different statute, held that "use" requires active employment rather than mere possession, 516 U.S. 137, 143 (1995), superseded by statute as recognized in, e.g., United States v. Sanders, 26 F. App'x 802, 804 (10th Cir. 2001) (unpublished), which is consistent with how the term was applied here. This court's unpublished decision in United States v. Gruber addressed facts distinguishable from this case. There, Gruber possessed a firearm in his waist band during a standoff following a high speed vehicular chase, but never pulled the gun out of his waistband, never displayed it or otherwise actively used it during the standoff. 192 F. App'x 773, 774–75, 777–79 (10th Cir. 2006) (unpublished).

The evidence presented at Campbell's trial, viewed in the light most favorable to, and drawing all inferences in favor of, the verdict, was sufficient to support a rational jury finding beyond a reasonable doubt that Campbell used the knife to assault Deputy O'Connor.

## D. The Government did not commit plain prosecutorial error during closing argument

Campbell asserts that, during closing argument, the Government "overemphasized the 'right' and 'wrong' decisions of running from the police: a crime not charged" in this case. (Aplt. Br. 18.) Campbell points to two remarks that the prosecutor made. (Id. at 7–8.) First, in his initial closing, the prosecutor argued:

> There were three people in that white Mercury [sedan] that day at the Dollar General; two of them made the right decision. When the U.S. Marshal deputies approached, lights on, sirens going, guns drawn, and told everyone: "Don't move, put your hands in the air," the two people in

the front of that car decided they would do what they were told. They put their hands in the air, and they stayed put. That was the right decision.

The defendant, Preston Campbell, made a different decision. He made the wrong decision. In fact, he made several wrong decisions. He decided, first, that he was not going to put his hands up and wait. He decided he was going to run. He decided he was going to run with an open knife in his hand. And then he decided that he was going to run, not around Deputy O'Connor into that open parking space where he could have just come straight out of the car - - he decided to run into Deputy O'Connor. And then he decided to swing that arm with the hand that held the knife at a uniformed federal officer. Preston Campbell decided that he was going to fight his way out of that corner he was in so that he could run away.

(R. v.2, p. 127.) Then, in his rebuttal closing, the prosecutor argued: "Unlike the other two people in that car who raised their hands up in response to law enforcement commands to, and lights and sirens, the defendant was the only one who jumped out of the car with a knife, came out swinging." (Id. at 147.)

Because Campbell did not object to either statement at trial, this court reviews for plain error. See Fed. R. Crim. P. 52(b); see also United States v. Burgess, 99 F.4th 1175, 1190 (10th Cir. 2024). To succeed on plain-error review, Campbell must "establish[] that '[1] the prosecutor's statement is plainly improper and (2) . . . affected his . . . substantial rights." Burgess, 99 F.4th at 1190 (quoting United States v. Kepler, 74 F.4th 1292, 1315 (10th Cir. 2023)). "To establish that an error affects a defendant's substantial rights, the appellant must show there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Id. (quoting Kepler, 74 F.4th at 1315; internal quotation marks omitted)). Campbell has not made either showing.

First, we see nothing plainly improper about those arguments. In arguing to the contrary, Campbell cites to several pages of case law addressing much more egregious prosecutorial arguments improperly appealing to jurors' passions and sympathy, such as comparing a defendant to Hitler or suggesting that if jurors acquitted the defendant, he might rape one of their loved ones next time. Campbell also asserts, unpersuasively, that the prosecutor's remarks here improperly invited jurors to base their verdict on "irrelevant considerations" (Aplt. Br. at 21 (quoting Kepler, 74 F.4th at 1316)), because he argued that this "case is about more than finding someone guilty for a crime; rather, it is for conduct that is not correct" (id. at 21–22). The prosecutor's two remarks did not over-emphasize Campbell's right or wrong choices. Moreover, his decision to flee when the deputies were engaged in their official duties of trying to arrest him goes directly to the charged offense. The prosecutor's two challenged comments were not plainly improper. But, even if we could say that they were improper, Campbell has not established that those two comments affected his substantial rights; that is, he has not shown that, but for those two comments, there is a reasonable probability that the result of the trial would have been different.

**E. There was no cumulative error warranting reversing Campbell's conviction**

Lastly, Campbell contends that cumulative error requires that his conviction be overturned. But the only possible error we have found is that the trial court abused its discretion in admitting irrelevant testimony that a police dog helping search for Campbell after he fled was injured by barbed wire. We have held that error was

16

harmless.  There is no other error to accumulate.  See United States v. Eckstein, 163 F.4th 1326, 1331 (10th Cir. 2026) (rejecting cumulative-error argument where there was only one error).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Campbell's conviction.